IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Todd A. Jones,

      Plaintiff,

      v.                           Case No. 2:05-cv-137

Ohio State University, et al.,

      Defendants.

ORDER

    This is an action filed by pro se plaintiff Todd A. Jones against The Ohio State University ("the University") and several University employees.  Plaintiff was formerly employed by the University as a custodial worker.  In his second amended complaint filed on October 12, 2005, plaintiff alleges that the defendants discriminated against him on the basis of sex and retaliated against him for filing charges of discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e et seq.  His complaint might also be construed as asserting a variety of state law claims, including civil conspiracy, defamation, infliction of emotional distress, tampering with evidence, assault, and negligence in the hiring and retention of plaintiff's supervisor, Derek Bynes.

        This matter is before the court on the motion for summary judgment (Doc. No. 56) filed by the University and defendants Becky Hines, Tommie Brown, Chitra Iyer, Robert Gregg, Megan Doust, Karen Holbrook, Ladonia Coatney, Peggy Barylak, Michael Lynch, Michael Mays, and Tosha Bozeman ("the individual defendants").  Plaintiff has also filed a document which purports to be either a cross-motion for summary judgment or a response to defendants' motion for

summary judgment (Doc. No. 60). The procedure for granting summary judgment is found in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).

The Sixth Circuit Court of Appeals has recognized that Liberty Lobby, Celotex and Matsushita effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. Street v. J. C. Bradford & Co., 886 F.2d 1472, 1476 (6th Cir. 1989). The court in Street identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. Id. at 1479. In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact

will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" <u>Id</u>. (quoting <u>Liberty Lobby</u>, 477 U.S. at 257). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. <u>Id</u>. It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" <u>Id</u>. (quoting <u>Matsushita</u>, 475 U.S. at 586). Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." <u>Id</u>. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

A court must construe a <u>pro se</u> plaintiff's pleadings more liberally than those pleadings prepared by an attorney. <u>See</u> <u>Wells v. Jefferson County Sheriff Dep't</u>, 159 F.Supp.2d 1002, 1004-05 (S.D.Ohio 2001). However, <u>pro se</u> litigants "are not exempted or excused from the Federal Rules governing pleading, dismissal for failure to state claims, and summary judgment." <u>Moore v. Holbrook</u>, 2 F.3d 697, 705 (6th Cir. 1993). A <u>pro se</u> litigant must comply with the rules of court. <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993). <u>See also</u> <u>McKinnie v. Roadway Express, Inc.</u>, 341 F.3d 554, 558 (6th Cir. 2003)("Ordinary civil litigants proceeding <u>pro se</u>, however, are not entitled to special treatment, including assistance in regards to responding to [dispositive] motions."); <u>Weaver v. Toombs</u>, 948 F.2d 1004, 1010 n. 10 (6th Cir. 1991)(<u>pro se</u> litigant is subject to relevant law and rules of court, including the Federal Rules of Civil Procedure); <u>Gordon v. Watson</u>, 622 F.2d

120, 123 (5th Cir. 1980)(<u>pro</u> <u>se</u> litigants must comply with Federal Rules of Civil Procedure and present proper summary judgment evidence).

<u>I. History of the Case</u>

The record reveals that plaintiff was employed as a custodial worker from September 30, 2002, until his removal on June 13, 2004. Plaintiff was initially supervised by defendant Michael Lynch through June of 2003, and was subsequently supervised by defendant Derek Bynes. The defendants have submitted the affidavit of Todd Hunter, who held the position of Manager of Labor Relations from July 1, 2003, through July 31, 2005. In that position, Hunter was responsible for the labor relations activities of the University, including approving disciplinary actions and consulting with managers and directors regarding labor relations issues. Plaintiff's disciplinary records are attached to the affidavit as exhibits. These records show the following disciplinary actions:

1. On October 22, 2002, plaintiff was counseled concerning his attendance, specifically, his absence for 21 unpaid hours due to illness, and his failure to inform his supervisor of his absence on one occasion. Plaintiff's supervisor at that time was Lynch. Ex. A-1.

2. A written reprimand dated May 19, 203, was issued due to plaintiff's absences, including 44.1 hours of leave without pay due to illness, 16 hours of leave without pay due to absence, and 2.1 hours of leave without pay due to tardiness. The form was signed by plaintiff's supervisor, Bynes. Ex. A-2.

3. An incident report was filed on June 9, 2003, concerning neglect of duty and loss of University property which occurred on May 28, 2003. According to the report, plaintiff lost his building keys in a trash can. The form was signed by Bynes. Ex. A-3

4. An incident report for insubordination was issued on July 17, 2003, after plaintiff refused to wear his uniform on

July 7, 2003.  Plaintiff claimed that his polo shirt, which previously fit, no longer did, and that he did not wear long-sleeved shirts in the summer.  Plaintiff was told twice by defendant Robert Greggs to put on his uniform pants, but he refused, stating that the pants did not constitute a uniform.  Greggs held the position of Superintendent, and was a supervisor over both plaintiff and Bynes.  Greggs then told plaintiff to clock out.  On July 9, 2003, plaintiff refused to put on the polo shirt so that Greggs could determine if it fit, and also refused to work in the uniform pants, opting instead not to work.  The report was signed by Greggs.  Ex. A-4.

5.   On September 10, 2003, plaintiff was issued an incident report due to neglect of duty on September 5, 2003. According to the report, plaintiff did not clock out or turn in his keys, identification and pager.  Bynes paged plaintiff, but he did not respond.  Bynes and Lynch conducted a search for plaintiff but were unable to locate him.  On September 8, 2003, plaintiff informed Greggs that he had gone out to his car and fallen asleep, and that when he awakened, everyone had left for the evening.  The Service Center received a call from plaintiff at approximately 3:00 a.m., and plaintiff stated he wanted to return his keys and identification. The report was signed by Bynes and Rebecca Hines, who was the director of building services and Greggs' supervisor. Ex. A-5.

6.   On October 8, 2003, plaintiff was issued an incident report for neglect of duty, failure to respond to a page, and failure to follow the clock-out procedures on October 4, 2003.  According to the report, Bynes paged plaintiff and received no response.  He was unable to locate plaintiff in his work area.  He notified Greggs and left the building.  At 2:25 a.m., John Moses at the Service Center received a call from plaintiff, who stated that he needed to pick up his keys and pager at the Central Service Building.  The report was signed by Greggs and Hines.  Ex. A-6.

7.   Plaintiff was notified by letter dated October 27, 2003, that he was being suspended for one day as a result of the reports and reprimands discussed above.  The letter was signed by Hunter.  Plaintiff was advised that further infractions of the same or similar nature might subject him to more severe disciplinary action up to and including dismissal.  Ex. A-7.

8.  On March 1, 2004, plaintiff was issued an incident report for neglect of duty, unauthorized break, and failure to complete a job assignment. This report indicates that on February 18, 2004, Bynes inspected the restrooms assigned to plaintiff and discovered that they had not been cleaned, and that the doors, which were scheduled to be locked at 10:00 p.m., had not been secured. Since plaintiff was scheduled to clock out at 1:00 a.m., he did not have sufficient time to complete his assigned duties. The report was signed by Greggs and Hines.  Ex. A-8.

9.  An incident report was issued to plaintiff on March 1, 2004, concerning neglect of duty, the failure to respond to a page, an unauthorized break, and failure to complete his job assignments on February 25 and 26, 2004. The report states that on February 25, 2004, plaintiff clocked out at 5:30 p.m. without completing the work in his assigned area, telling Bynes that the elevator in the building was not working. On February 26, plaintiff called Hines at 3:45 p.m. and stated that if the elevator had not been repaired, he was not coming to work. Hines informed plaintiff that this was not a valid reason for not reporting to work. At 4:00 p.m., plaintiff called and reported that he would not come to work because the elevator was not functioning. The report was signed by Greggs and Hines.  Ex. A-9.

10. In March of 2004, two other incident reports were prepared. The first involved neglect of duty and failure to follow departmental policies due to plaintiff's failure on March 4, 2004, to be present for instructions concerning a new work assignment and his failure to park his vehicle prior to clocking in. Ex. A-10. The second report involved neglect of duty and an unauthorized break on March 23, 2004. On that occasion, Bynes asked the Service Center to page plaintiff at 10:00 p.m. to tell plaintiff to meet him in the Denney Hall basement, and plaintiff was so instructed. Bynes walked through plaintiff's assigned area, including the restrooms, and was unable to locate plaintiff. When plaintiff came to the basement at 11:30 p.m., he informed Bynes that he had been in the restroom. Ex. A-10. These reports were not presented to plaintiff due to his termination.

According to Hunter's affidavit, plaintiff was involved in an altercation with Bynes between midnight and 1:00 a.m. on March 27,

6

2004.  Each claimed to have been attacked by the other.  Plaintiff returned to the scene while campus police officers were investigating, and both plaintiff and Bynes continued to act in a hostile manner, causing the officers to separate them.

The police report of the incident authored by Officer Aaron Ward, attached as Exhibit B to Hunter's affidavit, states that plaintiff and Bynes engaged in a verbal and physical altercation with each other.  The police responded upon receiving a telephone call from plaintiff's mother, Floristine Jones, who stated that plaintiff had been attacked by Bynes.  Mrs. Jones was on the phone with plaintiff at the time, and she heard a verbal altercation break out, after which the call was disconnected.  The officers found Bynes in his office writing an administrative complaint. Bynes stated that he and plaintiff had a history of conflict due to plaintiff's conduct at work.  He claimed that he heard plaintiff using the pay phone, muttering comments about Bynes.  Plaintiff then made fun of Bynes' deceased mother.  When Bynes approached plaintiff, plaintiff shoved the phone receiver in Bynes' face. Bynes grabbed the receiver and hung it up.  Plaintiff shoved Bynes in the chest, and Bynes pushed plaintiff away.  Plaintiff started to remove his shirt and continued to yell insults at Bynes. Defendant Tosha Bozeman, another custodian, entered the lobby and placed herself between Bynes and plaintiff in an attempt to diffuse the argument, after which plaintiff left the lobby.

Officer Ward further stated in his report that plaintiff returned to the scene while the officers were interviewing Bynes, and the two men had to be separated because they were acting in a hostile manner towards each other.  Plaintiff claimed that Bynes

7

heard him informing Mrs. Jones that Bynes was intoxicated. According to plaintiff, Bynes grabbed the phone from his hand and tried to grab plaintiff, who pushed Bynes away. Plaintiff left the building after Bozeman intervened. The officers observed small cuts on plaintiff's thumb and upper chest, and plaintiff's right eye was bloodshot. The officers noticed an odor of alcohol about Bynes' person. Bozeman stated that she did not witness any physical fighting between the men, and no other person came forward as a witness. As a result, no charges were filed.

Following pre-corrective hearings, the University terminated the employment of plaintiff and Bynes for violating the Workplace Violence Policy. This policy prohibits any act that results in threatened or actual harm to a person or property in the workplace, including direct or implied threats and intimidating conduct or harassment that disrupts the work environment or results in fear for personal safety. Hunter Aff., Ex. C. Hunter made the final decision to terminate plaintiff's employment. He stated that he based his decision on the recommendation of defendant Chitra Iyer, a human resources consultant who presided over plaintiff's hearing, and the contents of the police report. Hunter concluded that plaintiff had participated in the altercation and contributed to its escalation, that plaintiff and Bynes had acted belligerently toward each other, and that plaintiff had returned to the scene and acted in a hostile manner toward Bynes. He further concluded that plaintiff had made an inappropriate comment about Bynes' mother which contributed to the escalation of the incident.

By letter dated May 25, 2004, Hunter notified plaintiff that his employment was terminated, effective June 13, 2004. The letter

stated:

> On May 19, 2003, you received a written reprimand for neglect of duty in the form of excessive [absenteeism]. On October 27, 2003, you received a first level notice for absenteeism and failure to follow departmental procedures. Since then, you have received two (2) incident reports for insubordination, neglect of duty in the form of failing to complete your job assignments, and taking unauthorized breaks. Three (3) other incident reports were also written for the same infractions; however, were not issued as you were absent. In addition, on March 27, 2004, you failed to respond to a page from your supervisor, made an inappropriate comment about the deceased mother of your supervisor, engaged in a physical and verbal altercation with your supervisor and returned to the scene, making threatening remarks, while police were investigating. This is against the University's workplace violence policy.

Hunter Aff., Ex. D.

Hunter stated in his affidavit that he did not consider plaintiff's sex or his filing of discrimination charges in deciding to terminate his employment. He also stated that he was unaware of persons in plaintiff's position being treated more favorably, and he noted that in November of 2004, another custodian and his supervisor were terminated after they engaged in a belligerent verbal altercation.

The record also shows that on October 22, 2003, plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC"), alleging that the incident report concerning plaintiff's refusal to put on his uniform on July 17, 2003, was issued because of his sex. Plaintiff later withdrew this charge. On April 23, 2004, plaintiff filed a charge of discrimination with the OCRC and EEOC. Plaintiff alleged that he received a poor annual performance evaluation on February 11, 2004, and incident reports on February

9

18, 2004, and February 26, 2004, and that he was attacked by Bynes on March 27, 2004. Plaintiff stated that these actions were in retaliation for filing the earlier charge of discrimination. A right to sue letter was issued on October 8, 2004.

In his second amended complaint, plaintiff alleged, among other things, that Ladonia Coatney, an employee relations consultant with the Department of Physical Facilities, Division of Resource Management, who was responsible for handling employee relations issues, and Peggy Barylak, a human resources area leader, also responsible for labor relations matters, including preparing requests for discipline, conspired together to withhold evidence from plaintiff during his pre-corrective hearing and obtained an allegedly false statement concerning the altercation.

Plaintiff alleged that Robert Greggs discriminated against him on the basis of sex in issuing the incident report about the uniform. He alleged that Tosha Bozeman was permitted to be out of uniform because she was female and had outgrown her uniform. He also alleged that Greggs permitted supervisors such as Bynes to file false disciplinary documents against plaintiff, and that Greggs retaliated against plaintiff for filing discrimination charges.

Plaintiff further alleged that Rebecca Hines failed to take corrective action when he complained about the uniform incident, thereby discriminating against him on the basis of sex, and that she retaliated against him for filing a charge of discrimination by obtaining false statements concerning his altercation with Bynes.

Plaintiff also alleged that Michael Lynch, his former supervisor, was present in the office on the night of the

10

altercation, and that he was guilty of a cover-up and withholding evidence.  He alleged that custodians Megan Doust, Tommy Brown, Tosha Bozeman, and Michael May gave false statements during the investigation of the incident.  He alleged that Bynes acted in retaliation for the filing of discrimination charges and gave false statements during the investigation into his altercation with plaintiff.

Plaintiff further alleged that University President Karen Holbrook failed to take corrective action in response to his letter complaining of mistreatment and termination, and failed to investigate the alleged mistreatment.

## II. Individual Defendants - Title VII Claims

The individual defendants have moved for summary judgment on plaintiff's Title VII claims, arguing that they cannot be found liable under Title VII.  It is well established that individual supervisors and employees are not subject to liability under Title VII.  Weberg v. Franks, 229 F.3d 514, 522 n. 7 (6th Cir. 2000); Wathen v. General Electric Co., 115 F.3d 400, 405 (6th Cir. 1997). Therefore, the Title VII claims against the individual defendants must be dismissed.[1]

## III. Title VII - Sex Discrimination Claim

This claim concerns the July 17, 2003, incident report which was issued as a result of plaintiff's refusal to wear his uniform on July 7, 2003.  Plaintiff contends that this constituted sex (gender) discrimination.

A claim of discrimination may be proven by either direct or

---

[1]Although defendant Bynes has not moved for summary judgment, it is clear as a matter of law that plaintiff's complaint does not state a claim against him under Title VII, and therefore the Title VII claims against Bynes will also be dismissed.

circumstantial evidence. <u>Anthony v. BTR Automotive Sealing Systems, Inc.</u>, 339 F.3d 506, 514 (6th Cir. 2003). Since no direct evidence of discrimination has been produced in this case, the framework for proving Title VII claims set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) applies.

To establish a prima facie case of disparate treatment under Title VII, plaintiff must prove: (1) he was a member of a protected class; (2) he was subject to an adverse employment action; (3) he was qualified for the job; and (4) similarly-situated employees not in the protected class were treated more favorably. <u>Clayton v. Meijer, Inc.</u>, 281 F.3d 605, 610 (6th Cir. 2002). However, this is a reverse-discrimination claim, which carries "a different and more difficult prima facie burden." <u>Briggs v. Potter</u>, 463 F.3d 507, 517 (6th Cir. 2006). "A plaintiff in a reverse-discrimination claim has established a prima facie case upon showing that 'background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority ... and upon a showing that the employer treated differently employees who were similarly situated but not members of the protected group.'" <u>Id</u>. (quoting <u>Yeager v. General Motors Corp.</u>, 265 F.3d 389, 397 (6th Cir. 2001)(internal quotation marks omitted)).

If plaintiff establishes a prima facie case, the burden then shifts to the employer to show that it had a legitimate, nondiscriminatory reason for its action. <u>Anthony</u>, 339 F.3d at 514-15. If the employer articulates such a reason, the plaintiff must show that the articulated reason was merely a pretext for discrimination. <u>Id</u>.

The court notes that plaintiff has submitted voluminous

documentation in opposition to defendants' motion for summary judgment. These documents are unauthenticated, and many contain redactions and handwritten comments. To be admissible in summary judgment proceedings, documents must be authenticated by and attached to an affidavit. Williams v. United Dairy, Inc., No. 2:03-cv-868, 2005 WL 1077596 at *5 (S.D. Ohio April 18, 2005). See also Lomax v. Sears, Roebuck & Co., 2000 WL 1888715 at *5 (6th Cir. Dec. 19, 2000); Steele v. Jennings, No. 2:04-cv-189, 2005 WL 2124152 at *3 (S.D. Ohio Aug. 31, 2005)(unauthenticated exhibits are not proper evidence for opposing or supporting a summary judgment motion). The documents also contain inadmissible hearsay evidence. Hearsay evidence may not be considered on a motion for summary judgment, Jacklyn v. Schering-Plough Healthcare Products Sales Corp., 176 F.3d 921, 927 (6th Cir. 1999), and a party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of fact. Sperle v. Michigan Dept. of Corrections, 297 F.3d 483, 495 (6th Cir. 2002).

However, the court has reviewed the documents submitted by plaintiff, and even if these documents are considered, plaintiff has not shown that he can establish a prima facie case of gender discrimination in this case.

Plaintiff must show that he was subjected to an adverse job action. An adverse employment action is a "materially adverse change in the terms and conditions of employment." Hollins v. Atlantic Co., 188 F.3d 652, 662 (6th Cir. 1999). De minimis employment actions are not actionable. Bowman v. Shawnee State Univ., 220 F.3d 456, 462 (6th Cir. 2000). Plaintiff bases his claim on the July 17, 2003, incident report which was issued as a result

13

of plaintiff refusing to wear his uniform. The incident report was simply a notification to the employee of improper behavior, not formal discipline. Turner Dep., p. 20. The incident report was later referred to in the October 27, 2003, letter as being one ground for a one-day suspension, but the suspension was also based on a combination of other violations committed by plaintiff. This sanction is not significant enough to amount to an adverse job action. See Rhodes v. Illinois Dep't of Transp., 359 F.3d 498, 505 (7th Cir. 2004)(docking one day's pay not adverse employment action).

Even assuming that the incident report constituted an adverse job action, plaintiff has produced no evidence that other similarly-situated female employees were treated differently. To be similarly situated, the plaintiff and the employee with whom the plaintiff seeks to compare himself must be similar in "all of the relevant aspects." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998)(quoting Pierce v. Commonwealth Life Ins. Co.., 40 F.3d 796, 802 (6th Cir. 1994). The comparable employees must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them. Ercegovich, 154 F.3d at 352.

Plaintiff relies on evidence that Tosha Bozeman, a female employee, was permitted to work without wearing a uniform. However, he has produced no evidence that she was similarly situated. There is no evidence that they shared the same supervisor, or that their circumstances were the same. Documents

14

indicate that after discussion with her supervisor, Bozeman was permitted to work without a uniform for a couple of weeks because she had gained weight and could no longer fit into her uniform, and her new uniform had to be specially ordered because the company did not carry her size in stock. Unlike plaintiff, she had not refused to wear her uniform in the past. In addition, plaintiff has not met the enhanced burden in a reverse discrimination case of producing evidence of circumstances sufficient to show that the University was the unusual employer that discriminates against men in the imposition of discipline. The record includes documents indicating that women employees, including Bozeman, were disciplined for various rules infractions on other occasions. For example, Norma Taynor, Ruth Sherrell, and Barbary Murphy were disciplined for failure to wear the proper uniform.

Since plaintiff has failed to show that a genuine issue of material fact exists in regard to his prima facie sex discrimination claim, the court need not address the University's legitimate nondiscriminatory reasons for the incident report. The University is entitled to summary judgment on this claim.

IV. Title VII Retaliation Claim

Plaintiff also asserts a claim of retaliation in violation of Title VII. In his charge of discrimination filed on April 23, 2004, plaintiff alleged that a poor annual performance evaluation on February 11, 2004, incident reports regarding events on February 18, 2004, and February 26, 2004, and the attack by Bynes on March 27, 2004, were in retaliation for filing the earlier charge of discrimination. He also argues in this case that his termination was motivated by retaliatory intent.

15

To establish a prima facie case of retaliation, plaintiff must prove that: (1) he engaged in protected activity; (2) this exercise of protected rights was known to the employer; (3) the employer thereafter took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. Ford v. General Motors Corp., 305 F.3d 545, 552-53 (6th Cir. 2002). Once plaintiff demonstrates a prima facie case, the employer must then articulate a legitimate, nondiscriminatory reason for its action. Wrenn v. Gould, 808 F.2d 493, 501 (6th Cir. 1987). If the employer does so, then the burden shifts back to the plaintiff to show that the articulated reason was a pretext for discrimination. Id.

The third prong requires evidence showing that the adverse employment action was materially adverse; de minimis employment actions are not materially adverse and are not actionable. Ford, 305 F.3d at 553.

To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action. E.E.O.C. v. Avery Dennison Corp., 104 F.3d 858, 861 (6th Cir. 1997). A causal connection may be shown by direct evidence or by evidence of the employer's knowledge of the complaints coupled with a closeness in time sufficient to create an inference of causation, or by evidence that plaintiff was treated differently from other employees. Johnson v. University of Cincinnati, 215 F.3d 561, 582 (6th Cir. 2000); Moore v. KUKA Welding Sys. & Robot Corp., 171 F.3d 1073, 1080 (6th Cir. 1999); Wrenn, 808 F.2d at 501.

16

However, temporal proximity alone is ordinarily not sufficient to establish causation in the absence of additional evidence to support a finding that the protected activity and the adverse action were connected. See Hafford v. Seidner, 183 F.3d 506, 515 (6th Cir. 1999)(no inference of causation where the disciplinary actions occurred two to five months after filing of charges); Cooper v. City of North Olmsted, 795 F.2d 1265, 1272 (6th Cir. 1986)(mere fact that discharge occurred four months after filing of discrimination charge insufficient to support inference of retaliation). Plaintiff cannot prevail if the employer's treatment of him was the same before and after the protected activity, see Workman v. Frito-Lay, Inc., 165 F.3d 460, 470 (6th Cir. 1999).

Plaintiff claims that his poor performance evaluation on February 11, 2004, constituted retaliation. However, poor performance evaluations, taken alone, cannot constitute a basis for Title VII retaliation. Morris v. Oldham County Fiscal Court, 201 F.3d 784, 789 (6th Cir. 2000). Rather, the evaluation must have an adverse impact on plaintiff. Parrish v. Ford Motor Co., 909 F.2d 1484 (table), 1990 WL 109188 (6th Cir. Aug. 2, 1990). There is no evidence that plaintiff's performance evaluation resulted in the imposition of any discipline, nor was it stated as a reason for his termination.

Plaintiff also cites the alleged attack on him by Bynes as constituting retaliation. However, even accepting plaintiff's version of the incident, Bynes' actions did not constitute an employment action. Bynes was not acting as a agent of the University when he engaged in a verbal and physical altercation with plaintiff. Rather, according to plaintiff, the attack was

personally motivated by the fact that plaintiff had reported Bynes'
drinking alcohol on the job to his supervisors.  Bynes was not
imposing an authorized disciplinary sanction.  Bynes was acting in
violation of the University's policy against verbal and physical
violence in the workplace, and his employment was terminated as a
result of his conduct.  Bynes' conduct did not constitute an
adverse job action.

On March 1, 2004, plaintiff was issued incident reports for
neglect of duty, unauthorized break, and failure to complete a job
assignment on February 18, 2004, and for neglect of duty, the
failure to respond to a page, an unauthorized break, and failure to
complete his job assignments on February 25 and 26, 2004.  As noted
previously, the incident reports were not disciplinary in nature,
and are not sufficient in themselves to constitute materially
adverse job actions.  These incident reports were referred to in
the termination letter, along with the many other infractions
contained in plaintiff's employment record.  However, they were
minor compared to the main reason advanced for plaintiff's
termination, that being his violation of the University's policy
against violence.

Assuming _arguendo_ that the incident reports constituted
adverse job actions, plaintiff has not produced evidence sufficient
to raise a genuine issue of fact as to the existence of a causal
connection between these incident reports and his charge of
discrimination.  Plaintiff filed his charge on October 22, 2003,
and the incident reports were issued on March 1, 2004, over four
months later.  Thus, there is no proximity in time to support a
causal connection.  Plaintiff received incident reports both before

and after he filed his charge, and thus the University's treatment of him was the same both before and after he filed his charge.

The evidence is also insufficient to show a causal connection between plaintiff's charge and his termination letter dated May 25, 2004, over seven months after he filed his October charge.  The letter was issued within a month after plaintiff filed his charge on April 23, 2004, alleging retaliation.  However, no evidence has been presented that Todd Hunter, the person who made  the decision to terminate plaintiff's employment, knew about either the October charge or the April charge at the time he made his decision.

Even assuming that plaintiff has presented sufficient evidence to establish a prima facie case of retaliation, the University has presented evidence of legitimate, nondiscriminatory reasons for terminating plaintiff's employment.  To establish that these reasons were pretextual, plaintiff must allege more than a dispute over the facts upon which his discharge was based.  Braithwaite v. Timken Co., 258 F.3d 488, 493-94 (6th Cir. 2001).  Under the "honest belief" rule, as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect.  Majewski v. Automatic Data Processing, Inc., 274 F.3d 1106, 1117 (6th Cir. 2001).

An employer has an honest belief it its reason for discharging an employee where the employer reasonably relied on the particularized facts that were before it at the time the decision was made.  Majewski, 274 F.3d at 1117.  A plaintiff's denial that he engaged in the conduct which resulted in his termination is

insufficient to raise a genuine issue of material fact as to whether the reasons for the discharge were pretextual.  Id.  See also Pugh v. City of Attica, Indiana, 259 F.3d 619, 627 (7th Cir. 2001)(employee's denial not sufficient to cast doubt on the honesty of the employer's belief); Green v. National Steel Corp., Midwest Div., 197 F.3d 894, 898-99 (7th Cir. 1999)(plaintiff's bald assertions that she did not engage in misbehavior insufficient to create a material dispute).

The precipitating reason for the termination of plaintiff's employment was his altercation with his supervisor, Derek Bynes. The University conducted an investigation of the incident and held a pre-correction hearing.  Plaintiff was given the opportunity to present his version of the incident, and a union representative was present with him at the hearing.  Other witnesses gave statements concerning the incident.  For example, the record includes a signed statement by Megan Doust, in which she states that plaintiff shoved the phone in Bynes' face, called Bynes' mother a bitch, made a statement threatening to "kick all of second shift's asses" and made threats to Tommie Brown, another custodial worker.  Hunter Dep., Ex. 5-A.  Tosha Bozeman stated that she observed plaintiff and Bynes "at each other's faces" arguing, and that she tried to separate them.  She also stated that plaintiff walked away, then returned and attempted to start another argument.  Hunter Dep., Ex. 5-B.  Officer Ward stated in his report that plaintiff returned to the scene while the officers were there, and plaintiff and Bynes had to be separated again because they were acting hostilely towards each other.

Plaintiff argues that these other witnesses are not worthy of

credibility, and that Hunter should have accepted his version of the incident. However, Hunter was not required to do so. Hunter testified in his deposition that in arriving at a decision, he considered the complete hearing package, including the notes of the hearing officer and the documents presented at the hearing. Hunter Dep., p. 91. There is no material dispute that he made a reasonably informed and considered decision which demonstrates an honest belief in the proffered reason for plaintiff's termination, and summary judgment is warranted. Braithwaite, 258 F.3d at 494.

The University is entitled to summary judgment on plaintiff's retaliation claim.

V. State Law Claims

Plaintiff has alleged what could be construed as state law claims against the University and the individual defendants. The decision whether to exercise jurisdiction of supplemental state claims under 28 U.S.C. §1367(a) is within the discretion of the court. Harper v. AutoAlliance International, Inc., 392 F.3d 195, 210 (6th Cir. 2004). A district court may decline to exercise supplemental jurisdiction over a supplemental state law claim if the court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. §1367(c)(1). Since this court has granted summary judgment to the defendants on the Title VII claims, this court will decline to exercise supplemental jurisdiction over plaintiff's state law claims, if any. See Saglioccolo v. Eagle Ins. Co., 112 F.3d 226 (6th Cir. 1997); Taylor v. First of America Bank-Wayne, 973 F.2d 1284, 1287 (6th Cir. 1992)(noting that if the federal claims are dismissed before trial, the state claims generally should be dismissed as well).

21

## VI. Conclusion

In accordance with the foregoing, the motion for summary judgment on plaintiff's Title VII claims (Doc. No. 56) is granted. Plaintiff's cross-motion for summary judgment and for trial (Doc. No. 60) is denied. This case is dismissed in its entirety. The clerk shall enter judgment in favor of all defendants on plaintiff's Title VII claims. The court declines to exercise jurisdiction over any state law claims which may be alleged in the complaint, and any such claims are dismissed without prejudice.

## VII. Other Pending Motions

Plaintiff's motion to admit evidence (Doc. No. 59) is denied. Plaintiff has not shown how evidence from other proceedings involving the University would be relevant in this case. Plaintiff's motion for a speedy trial (Doc. No. 65) is moot in light of the court's ruling on defendants' motion for summary judgment. Plaintiff's motion for further evidence to be admitted (Doc. No. 68), which basically refers to all the previous unauthenticated documents offered by plaintiff, is denied. However, as previously noted, the court has reviewed this evidence in ruling on the motion for summary judgment, and has found that the evidence fails to raise any genuine issue of material fact which would preclude summary judgment.

Plaintiff's motion to admit expert witness testimony (Doc. No. 97) and plaintiff's motion to permit expert witnesses to testify (Doc. No. 109) are moot. Plaintiff's motions for a hearing and for sanctions (Doc. Nos. 103, 110 and 111) are denied.

It is so ordered.


Date: May 29, 2007                   _____s\James L. Graham_____
                                     James L. Graham
                                     United States District Judge